# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 17, 2006      Decided December 5, 2006
Reissued December 11, 2006

No. 05-5496

RICHARD COLEMAN, ET AL.,
APPELLANTS

v.

PENSION BENEFIT GUARANTY CORPORATION,
A PUBLIC CORPORATION,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 99cv00278)

———

*David B. Rodes* argued the cause for appellants. With him on the briefs were *John T. Tierney, III* and *Betsy Lehrfeld*.

*John A. Menke*, Assistant Chief Counsel, Pension Benefit Guaranty Corporation, argued the cause for appellee. With him on the brief were *Jeffrey B. Cohen*, Chief Counsel, *Israel Goldowitz*, Deputy Chief Counsel, *Paula J. Connelly*, Assistant Chief Counsel, and *Erika E. Barnes*, Attorney. *Nancy S. Heermans*, Associate Chief Counsel, entered an appearance.

Before: SENTELLE and KAVANAUGH, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed *Per Curiam*:

*Per Curiam*: Appellants, a certified class of former employees of McLouth Steel Products Corporation ("McLouth"), seek review of a grant of summary judgment in favor of the Pension Benefit Guaranty Corporation ("PBGC"), successor to McLouth's terminated pension plan (the "Products Plan"). Appellants filed suit under §§ 406, 502 and 4003(f) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1106, 1132, 1303(f) (2000), claiming that, under the Products Plan, they are entitled to (1) mutual consent benefits that attach when qualifying individuals experience breaks in continuous service and (2) shutdown benefits that attach when a plant is permanently shutdown. The District Court rejected appellants' claims. *Coleman v. PBGC*, No. Civ. A. 99-00278 (D.D.C. Nov. 28, 2005). We affirm for the reasons stated in the decision of the District Court.

\* \* \*

The Retirement Equity Act of 1984 ("REA"), Pub. L. No. 98-397, 98 Stat. 1426 (codified as amended in scattered sections of 26 U.S.C. and 29 U.S.C.) prohibits discretionary benefit provisions in pension plans. Appellants contend that McLouth failed to comply with Treasury Regulation 1.411(d)-4, Q&A 8, which governs the amendment of pension plans to remove mutual consent pension benefits (a type of discretionary benefit). The regulation required McLouth to decide, by November 1, 1989, to terminate the discretionary benefits and to amend the plan, by October 31, 1995, to reflect that decision. The regulation explicitly states that there is no requirement that the plan sponsor memorialize or document the decision made, and requires only that the plan be administered in accordance with that decision. In short, it is an "operational compliance requirement." Treas. Reg. 1.411(d)-4, Q&A 8(c).

Appellants, who during the relevant period were members of the United Steelworkers of America (the "Union"), contend that, while McLouth and the Union agreed to amend the plan to remove the discretionary benefit provisions, the amendment was neither properly executed nor authorized. The District Court rejected this allegation, finding that "[t]he record in this case is clear that the Union and McLouth did 'mutually agree' . . . that subsections 2.6(d) and 2.7(d), the mutual consent provisions, would be eliminated from the Products Plan in order to comply with the relevant Treasury regulations." *Coleman*, No. Civ. A. 99-00278, slip op. at 25. We agree. The relevant parties did agree and this mutual agreement is all that is required for amendment under the terms of the Products Plan. Appellants' contention that the amendment is defective because it did not conform to what appellants argue is McLouth's standard practice for corporate action is without merit.

Similarly unavailing is appellants' allegation that McLouth did not in fact administer the plan in accordance with its decision not to grant mutual consent benefits. The sole "evidence" to which they point in support of their claim is an unsworn declaration by the former recording secretary for the Union, averring that he "recall[ed] at least one (1) employee of McLouth Steel Products was granted and received a mutual consent [benefit] in the early 1990's." Joint Appendix 591a. While a party challenging summary judgment need only allege facts that, if true, create a dispute concerning a material fact, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 255 (1986), "some statements are so conclusory as to come within an exception to that rule," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). The recording secretary's declaration is such a statement and does not preclude a grant of summary judgment.

4

\* \* \*

Next, appellants contend that they are entitled to shutdown benefits because the plant was permanently shut down prior to the termination of the Products Plan. They cite the layoff of most McLouth employees and the shutdown of production as evidence of a permanent shutdown of the plant. The District Court rejected this claim, as do we. Pursuant to a Memorandum of Understanding ("MOU"), McLouth, the Union, and PBGC agreed that PBGC would not unilaterally terminate the plan until just before the plant was to be shut down. In exchange for PBGC's forbearance from terminating the plan (and allowing plan beneficiaries to continue accruing benefits), the parties agreed that the termination date of the Products Plan would be one day before the plant was permanently shut down. The principal effects of the MOU were two-fold: it ensured that PBGC would not be liable for shutdown benefits; and it allowed employees to continue accruing benefits until the plant was ready to be shut down. On August 7, 1996, both McLouth and the Union represented to PBGC that a permanent shutdown was imminent. PBGC terminated the Products Plan on August 13, 1996, and the plant was permanently shut down the next day.

Appellants insist that, because employees were laid off before the plan was terminated and had no expectation of returning to work, the plant was closed permanently before termination of the Products Plan. We disagree. As the District Court recognized, "neither McLouth nor the Union considered the shutdown in production to be the equivalent of a 'permanent shutdown' for purposes of the Products Plan." *Coleman*, No. Civ. A. 99-00278, slip op. at 20. The District Court also concluded that PBGC reasonably relied on the representations of McLouth and the Union in determining when the plant was to be permanently shut down. *Id.* at 19. We agree.

Because there are no genuine issues of material fact, and because the District Court correctly construed and applied the agreements, Treasury Regulation, and statutory provisions at issue in this case, summary judgment was fully justified. We therefore affirm.

*So ordered.*